O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS ORTEGA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | Case No. ED CV 14-839-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On April 30, 2014, plaintiff Dennis Ortega filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both parties have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

Plaintiff presents one issues for decision: whether the Administrative Law Judge ("ALJ") properly rejected the opinion of treating psychologist Dr. Joan Cartwright. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-13; Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-12.

Having carefully studied the parties' written submissions, the decision of the ALJ, and the Administrative Record ("AR"), the court concludes that, as detailed herein, the ALJ improperly rejected Dr. Cartwright's opinion. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-two years old on his alleged disability onset date, completed school through the tenth grade. AR at 34, 138. He has past relevant work as a glazier, cement mason, construction laborer, bouncer, hospital cleaner, and home inspector. *Id.* at 249.

On January 18, 2011, plaintiff applied for a period of disability and DIB, alleging he has been disabled since May 23, 2006 due to back injury, depression, anxiety, and back/lumbar pain with multiple surgeries and mental incapacity. *Id.* at 138, 161. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 58-76, 82-89, 92-94.

On November 7, 2012, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 31-50. The ALJ also heard testimony from David Rinehart, a vocational expert. *Id.* at 51-55. On December 13, 2012, the ALJ denied plaintiff's claims for benefits. *Id.* at 13-23.

2

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity from May 23, 2006, the alleged onset date, through December 31, 2011, the date last insured. *Id.* at 15.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: depression; anxiety; diabetes mellitus; degenerative disc disease of the lumbar spine, status post multiple surgeries; failed back syndrome; hypertension; hypothyroidism; cervical neuritis; osteoarthritis; polyneuropathy; and migraine headaches. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* The ALJ specifically considered whether plaintiff satisfies the paragraph B or paragraph C criteria of listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders). *Id.* at 15-16. The ALJ concluded plaintiff's impairments fail to meet or equal the requirements of any listing. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that plaintiff had the RFC to perform light work with the limitations that plaintiff could: stand or walk for six hours out of an eight-hour workday, but for no more than 20 to 30 minutes at a time; sit for six hours out of an eight-hour workday with brief position changes, but for no more than one hour at a time;

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

occasionally bend, stoop, climb stairs, and balance; rarely kneel, crawl, squat, or crouch. *Id.* at 16-17. The ALJ also determined that plaintiff should work with things rather than people, and could not: climb ladders, ropes, or scaffolds; work at unprotected heights, around moving machinery, or other hazards; work in positions requiring hypervigilance or intense concentration on a particular task; be exposed to work vibration; or have concentrated exposure to extreme temperatures. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform any past relevant work. *Id.* at 21.

At step five, the ALJ found there were jobs that exist in significant numbers in the national economy that plaintiff could perform, including small products assembler, inspector/hand packager, and office helper. *Id.* at 21-22. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 22.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v.*

4

*Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff argues the ALJ failed to properly consider the opinion of his treating psychologist, Dr. Joan Cartwright. P. Mem. at 2-13. Specifically, plaintiff contends that the ALJ did not cite specific and legitimate reasons supported by substantial evidence for rejecting Dr. Cartwright's opinion. *See id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians;

(2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2); 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

  Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830; *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (applying the same test to reject plaintiff's treating psychologist's opinion). Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Lester*, 81 F.3d at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

  Here, the ALJ stated she gave little weight to Dr. Cartwright's opinion "that [plaintiff] has a poor ability to complete a normal workday or workweek due to

depression" because: (1) "Dr. Cartwright did not provide objective clinical or diagnostic findings to support [her] functional assessment"; (2) the opinion is inconsistent with the objective findings in the record as a whole that "show very limited treatment for depression, generally isolated to medication"; and (3) determination of plaintiff's abilities to complete a workday or workweek is "an issue reserved to the Commissioner" and thus "not entitled to controlling weight." AR at 20 (citing 20 CRF § 404.1527(e); Social Security Ruling ("SSR") 96-5p)[2]; *see* 20 C.F.R. § 416.927(d).

## A. The ALJ Materially Erred in Her Characterization of Dr. Cartwright's Clinical and Diagnostic Findings

On November 1, 2011, Dr. Cartwright evaluated the status of plaintiff's mental disorder and its impact on his functional capacity. AR at 546-48. Dr. Cartwright found plaintiff has a good ability to "[u]nderstand, remember, and carry out complex instructions"; unlimited ability to "[u]nderstand, remember, and carry out simple instructions"; unlimited ability to "[m]aintain concentration, attention, and persistence"; good ability to "[p]erform activities within a schedule and maintain regular attendance"; but a poor ability to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms"; and only a fair ability to "[r]espond appropriately to changes in a work setting." *Id.* at 548. The evaluation form directs practitioners to define an

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's Thapolicies. SSRs are binding on all components of the Social Security Administration. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

individual's ability as "poor" when "the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." *Id.* Dr. Cartwright justifies her functional determinations by stating "[plaintiff]'s constant pain interferes with his ability to work in the normal world of work consistently." *Id.* Plaintiff argues there is objective support in the record for Dr. Cartwright opinion. P. Mem. at 2-6.

Dr. Cartwright's assessment is based, in part, on her February 25, 2011 comprehensive psychological examination of plaintiff conducted in compliance with California Workers' Compensation standards.[3] AR at 482-499. During this examination Dr. Cartwright recorded plaintiff's complaints (*id.* at 483-85), conducted a mental status examination (*id.* at 486), obtained a psycho-social history from plaintiff (*id.* at 486-87), and assessed plaintiff's mental abilities using two different test batteries.[4] *Id.* at 487-88. Dr. Cartwright diagnosed plaintiff with major depressive disorder, constant pain in his back, residual trauma from a work injury, and a Global Assessment of Functioning ("GAF") rating of 50.[5] *Id.* at 488.

---

[3] Plaintiff filed a separate Workers' Compensation claim based on the the back injury he suffered in the course of moving a heavy object at his former job as a window installer. AR at 17, 33, 488-89.

[4] Although psychological testing was conducting, it "produced a profile that appears to be of some doubtful validity." AR at 487-88. In her report, Dr. Cartwright noted plaintiff was experiencing "extreme pain" during the testing and cautioned "the results must be looked at very carefully." *Id.* The more reliable test placed plaintiff "in the mild/moderate depression range." *Id.*

[5] The Global Assessment of Functioning ("GAF") scale is designed to provide psychiatrists a method of scoring and comparing patients functional capacity in light of diagnoses. *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994); P. Mem. at 5-9 nn.2-4; D. Mem. at 1-3 nn.1-3.

After her initial examination, Dr. Cartwright found plaintiff required psychotherapy at least once a week, and possibly twice a week, to treat his major depressive disorder. *Id.* at 491. Dr. Cartwright maintained regular treatment sessions with plaintiff through June 2012. *Id.* at 595-96. In addition to her psychological evaluation and functional assessment, Dr. Cartwright submitted to the record two letters, written on December 7, 2011 and June 21, 2012. In both letters Dr. Cartwright confirms that plaintiff, who attended weekly therapy since March 2011, "comes to his sessions on time and works hard," and is in need of "ongoing therapy and support to deal with his major problems." *Id.* at 595-96. Both letters note plaintiff's stress, anxiety, and marital problems related to his lack of employment, but both also indicate plaintiff's extreme pain is being managed with medications. *Id.*

The ALJ indicated Dr. Cartwright's GAF score of 50 was "denoting mild to moderate" rather than serious symptoms. AR at 19. This characterization is erroneous. A GAF score of 41-50 is indicative of "serious symptoms," such as suicidal ideation or an inability to maintain employment (DSM-IV at 34), while a score of 51-60 evidences "moderate symptoms," such as infrequent anxiety attacks or clashing with co-workers (*id.*), and a score of 61-70 is indicative of "mild symptoms" such as depression or occasionally missing work. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 1994). The ALJ's characterization is not consistent with the actual numeric value designated by Dr. Cartwright, which is more fairly described as denoting moderate to serious symptoms.

Defendant argues Dr. Cartwright's February 2011 report does not provide substantial support for her November 2011 assessment, because a functionally disabling limitation is inconsistent with the impairment recorded during the

examination. D. Mem. at 9-10. Immediately after her evaluation of plaintiff, Dr. Cartwright rated plaintiff's abilities in eight work functions and found only "slight to moderate" impairments. AR at 489-90. It is possible the ALJ based her assessment of Dr. Cartwright's GAF rating on the fact that the rating appears to be inconsistent with Dr. Cartwright's findings and descriptions in her examination report. *Id.* The report lists none of plaintiff's impairments as serious and qualifies plaintiff for vocational rehabilitation. AR at 489-91. But the ALJ did not provide such an analysis. *Id.* at 20. The ALJ merely stated, "[a]t this evaluation, [plaintiff] was diagnosed with major depressive disorder; and assessed with a Global Assessment of Functioning (GAF) score of 50, denoting mild to moderate symptoms." *Id.* at 19. The ALJ does not further explain her own conclusion or discuss Dr. Cartwright's specific findings.

      Plaintiff argues the impairments recorded by Dr. Cartwright during her initial examination of plaintiff must be translated from the Workers' Compensations system of rating functionality. P. Mem. at 10-11. Plaintiff contends the ALJ failed to "interpret" California Workers' Compensation terms of art, such as "slight" and "moderate" into corresponding Social Security terminology. P. Mem. at 10-11. An ALJ is required to "translate" such terms "in order to accurately assess the implications of those opinions for the Social Security disability determination" and may not "disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105-06 (C.D. Cal. 2002) (citation omitted).

      Under California Workers' Compensation, an evaluating physician uses a standardized "Work Function Impairment Form" to rate a patient in eight specific functional areas. WARREN L. HANNA, CALIFORNIA LAW OF EMPLOYEE INJURIES

AND WORKERS' COMPENSATION § 32-02 [5][b][iii] (Rev. 2d Ed., 2004). The patient's capability is categorized as one of five levels of functionality: "(1) 'minimal' – discomfort but not disabling; (2) 'very slight' – a detectable impairment; (3) 'slight' – a noticeable impairment; (4) 'moderate' – a marked impairment; and (5) 'severe' – the employee is unable to perform a work function." *Id.* at n.64. Dr. Cartwright's assessment thus evidences plaintiff's noticeable to marked impairment in six of eight categories, including the ability to perform complex tasks; relate to co-workers and supervisors; and make decisions without supervision. AR at 490. In Social Security parlance, such an assessment is closer to a finding of "moderate to marked" impairments rather than "slight to moderate." *See* SOCIAL SECURITY MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES, FORM HA-1152-U3 (04-2009), OMB No. 0960-0662 (describing five classifications of functionality: (1) "None" – no limitation; (2) "Mild" – slight limitation but continues to function well; (3) "Moderate" – a greater than slight limitation but satisfactory functionality; (4) "Marked" – serious limitation present; and (5) "Extreme" – no functional ability).

Defendant additionally argues Dr. Cartwright's report fails to provide substantial support for her later functional assessment because much of this report is based solely on plaintiff's self-reported symptoms, which the ALJ discounted as not credible. D. Mem. at 3-4; *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)). Plaintiff does not challenge the ALJ's discounting of his credibility or the ALJ's determination of plaintiff's physical limitations. *See Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 434 (9th Cir. 1988) (finding it "reasonable to question the reliability of a physician's opinion based only on [plaintiff's] complaints" when plaintiff's credibility is substantially undermined by the record). Nonetheless, in

discrediting the doctor's opinion, the ALJ does not reference plaintiff's credibility or the report's reliance on plaintiff's self-assessment. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Since the ALJ did not give this as a reason, the court does not consider it.

When correctly characterized, Dr. Cartwright's findings support her functional assessment that plaintiff has a poor ability to complete a normal workday or workweek due to depression. Thus the ALJ's first reason for rejecting Dr. Cartwright's opinion is not a specific and legitimate reason supported by substantial evidence. *See Lester*, 81 F.3d at 830.

**B.**     **The ALJ Mischaracterizes the Record Evidence of Plaintiff's Treatment**

Before concluding Dr. Cartwright's opinion was not supported by the record, the ALJ reviewed the record as a whole including plaintiff's pain management regimen, and she discussed the results of several physical examinations conducted between August 25, 2009 and February 2011. AR at 19; *see* 20 C.F.R. § 404.1512; SSR 96-5p. "Turning to the medical evidence," the ALJ stated "the records show [plaintiff's] current treatment is limited to pain management and routine follow-up care." AR at 18. The ALJ found Dr. Cartwright's opinion about plaintiff's lack of ability to complete a workday or workweek "inconsistent with the objective findings" in the record, which "show very limited treatment for depression, generally isolated to medication. *Id.* at 20.

The ALJ observed plaintiff was first referred to psychiatric treatment in early 2011, which prompted plaintiff's initial evaluation by Dr. Cartwright. *Id.*; *see id.* at 432, 437, 442. The ALJ noted plaintiff was taking Cymbalta but had stopped. *Id.* at 17. The record reflects plaintiff was prescribed Cymbalta at some

point prior to November 2008. *Id.* at 274. Plaintiff testified "[he] took it like four or five times," but the treatment was terminated due to "a really bad side effect." *Id.* at 43. In contrast to the ALJ's characterization of plaintiff's treatment, between November 2009 and November 2012, the time of plaintiff's hearing, plaintiff was prescribed no medication designed to treat depression. *Id.*; *see also id.* at 255-72. At the hearing, plaintiff acknowledged Dr. Cartwright is not licensed to write prescriptions. AR at 43. Plaintiff testified he had only very recently changed to an alternate therapist who works in an office with physicians who could presumably write prescriptions. *Id.*

Plaintiff contends the ALJ erred in her assertions about plaintiff's treatment, because she failed to acknowledge plaintiff's regular attendance at weekly therapy sessions. P. Mem. at 10; *see* AR at 546, 595-96. Defendant argues the ALJ's failure to mention plaintiff's therapy sessions does not undermine her conclusion that based on the record as a whole plaintiff was receiving a conservative course of treatment for depression, which would be inconsistent with a finding of total disability. D. Mem. at 6-7 (citing *Rodriguez v. Colvin*, 2014 WL 2215875, at *4 (C.D. Cal. May 29, 2014); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Channen v. Colvin*, 2013 WL 3864054, at *3 (C.D. Cal. July 24, 2013) (discussing therapy and medication as a conservative course of psychiatric treatment)). A lack of treatment for depression could support the ALJ's conclusion, but it is unclear that this statement is supported by the record. As discussed above, the ALJ fails to further explain her own conclusions or discuss Dr. Cartwright's findings. Since the ALJ did not cite "conservative treatment" as a reason for rejecting Dr. Cartwright's opinion, the court does not consider it. *See Orn*, 495 F.3d at 630. Furthermore the ALJ's mischaracterization of plaintiff's

actual treatment as consisting primarily of medication without acknowledgment of plaintiff's therapy casts doubt upon the ALJ's understanding of the record.

With regards to plaintiff's mental limitations, the ALJ assigned significant weight to the opinion of consultative psychologist Dr. Michael Cohn. AR at 20. In October 2011, Dr. Cohn conducted an independent examination of plaintiff. *Id.* at 540-45. Dr. Cohn's Mental Status Examination resulted in a diagnosis of major depression, single episode, severe, and partner relational problem. *Id.* at 543. He assessed plaintiff with a GAF of 60. *Id.* at 544. He found plaintiff had moderate limitations in his ability to understand complex instructions; interact with co-workers, supervisors, and the public; maintain concentration, persistence and pace; and perform work without special supervision. *Id*

Generally the independent findings of an examining psychologist would constitute a well supported specific and legitimate reason for rejecting or discounting a treating physician's opinion. *See Tonapetyan*, 242 F.3d at 1149 (citations omitted) ("[Examining doctor's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [plaintiff]."); *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); *Smolen*, 80 F.3d at 1285 (asserting an ALJ is not bound by the opinion of the treating physician). But here, because of the ALJ's unsupported and unexplained conclusory statements and mischaracterization of the record, it is not clear that the objective evidence actually supports Dr. Cohn's and not Dr. Cartwright's opinion.

The ALJ did little more than conclude Dr. Cartwright's opinion that plaintiff's depression renders him totally disabled warrants little weight. AR at 17-19. The ALJ failed to "set forth [her] own interpretations and explain why

they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988)). Contrary to plaintiff's assertions, Dr. Cohn's contradictory findings are sufficient to support the ALJ's denial of controlling weight to Dr. Cartwright's opinion. *See* P. Mem. at 12-13. But the ALJ's total rejection of Dr. Cartwright's opinion based on lack of objective findings in the record as a whole is not supported by substantial evidence. *Booth*, 181 F. Supp. 2d at 1108 ("Even when a treating physician's opinion is contradicted by the opinion of another physician and is not entitled to controlling weight, it cannot be rejected without specific, legitimate reasons supported by substantial evidence in the record.").

### C. **Plaintiff's Ability to Complete a Workday or Workweek Is Not an Issue Reserved to the Commissioner, But the Determination of How This Assessment Impacts Plaintiff's RFC or Disability Status Is Reserved**

Plaintiff argues Dr. Cartwright's functional analysis of plaintiff is within the purview of a "work-related ability expressed in a medical source statement." P. Mem. at 7 (citing AR at 549).

Social Security policy makes clear "some issues are not medical issues regarding the nature and severity of an individual's impairment(s)" and that such issues are "reserved to the Commissioner." SSR 96-5p. The ruling specifically reserves the determination of an individual's RFC and whether an individual is "disabled." SSR 96-5p. Defendant argues the ALJ was entitled to disregard the doctor's analysis because it was a determination of plaintiff's status as disabled. D. Mem. at 8; *see Robinson v. Colvin*, 2013 WL 2429652, at *8 (C.D. Cal. June 4, 2013)); *see also* 20 C.F.R. § 404.1527(d)(1); SSR 96-5.

"[U]nder the Commissioner's regulations, the fact that a treating physician has rendered an opinion that can be characterized as an opinion on the ultimate

issue of disability does not relieve the Commissioner of the obligation to state specific and legitimate reasons for rejecting it." *Khoury v. Astrue*, 2008 WL 4723362, at *3 n.2 (C.D. Cal. Oct. 21, 2008). A medical source opinion is defined as a "treating sources and consultative examiners [finding] about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." SSR 96-5p. Dr. Cartwright's examination reports "the *evidence supports* the conclusion that the individual cannot usefully perform or sustain the activity." AR at 548 (emphasis added). Dr. Cartwright's functional analysis is based on her interpretation of the evidence related to plaintiff's condition, including her interactions with plaintiff as a treating psychologist, as such it is a medical opinion that must be considered. SSR 96-5p ("[A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.").

Although the ALJ must consider all medical source opinions, the policy emphasizes an ALJ should be mindful of applying such opinions to issues reserved to the Commissioner. SSR 96-5p. "[Any single] medical source statement may provide an incomplete picture of the individual's abilities" because not every practitioner will have access to all the evidence available in the record. *Id.* In contrast to a medical source statement, an RFC "describes an adjudicator's finding about the ability of an individual to perform work-related activities" and "is based upon consideration of all relevant evidence in the case record." *Id.*

The ALJ did not err in declining to give Dr. Cartwright's opinion controlling weight or special significance when making the determination whether plaintiff's impairments preclude him from all work (*id.*; *see* AR at 20), because this determination is specifically reserved to the Commissioner and must be based

on the record as a whole. 20 C.F.R. § 404.1512(d); SSR 96-5p. But the ALJ erred in her characterization of Dr. Cartwright's opinion that plaintiff cannot complete a normal workday or workweek as a determination reserved for the Commissioner. As such, this characterization is not a specific and legitimate reason for rejecting Dr. Cartwright's opinion.

**D.     The ALJ Failed to Consider the Balance of Dr. Cartwright's Opinion**

Plaintiff argues that, even if the ALJ properly discounted Dr. Cartwrights functional assessment of plaintiff's ability to complete a standard workweek or workday, the ALJ impermissibly rejected the remainder of Dr. Cartwright's opinion by "doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive." P. Mem. at 11 (quoting *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014)).

Defendant argues the ALJ did not reject or ignore Dr. Cartwright's evaluations of plaintiff, but rather the ALJ specifically notes Dr. Cartwright's GAF rating, and points to Dr. Cartwright's notations which indicate plaintiff displayed mild to moderate symptoms. D. Mem. at 9; *see* AR at 19. In light of the Workers' Compensation context under which Dr. Cartwright assessed plaintiff's abilities, as discussed above, this is not a reasonable characterization of Dr. Cartwright's findings. The ALJ may have appropriately given significant weight to the opinion of Dr. Cohn (*id.* at 21), but her mischaracterization of plaintiff's course of treatment and the findings of plaintiff's treating psychologist (*id.* at 20), combined with a complete lack of discussion of any of Dr. Cartwright's other findings, renders the ALJ's decision lacking in a specific and legitimate reason supported by substantial evidence for rejecting the remainder of Dr. Cartwright's opinion.

On her functional assessment, in addition to finding plaintiff incapable of successfully completing a normal workday or workweek, Dr. Cartwright opined plaintiff's capacity to "respond appropriately to changes in a work setting" is only fair. *Id.* at 497. According to Dr. Cartwright's initial evaluation of plaintiff, as translated to Social Security terms, plaintiff has noticeable to marked impairment in six of eight categories, including the ability to perform complex tasks; relate to co-workers and supervisors; and make decisions without supervision. AR at 490. Based on Dr. Cohn's assessment, the ALJ accounted for plaintiff's "[m]oderate limitations in social functioning and maintaining of concentration and attention, persistence and pace" by limiting plaintiff to "work with things rather than people" and precluding plaintiff "from jobs requiring hypervigilance or intense concentration on a particular task." But it is unclear if this accounts for all of Dr. Cartwright's opined limitations in plaintiff's RFC, and the ALJ failed to provide any analysis in this regard.

An ALJ's failure to include limitations noted by a physician may constitute an implicit rejection of that physician's opinion. *See Smolen*, 80 F.3d at 1286 ("By disregarding [plaintiff's treating physicians'] opinions and making contrary findings, [the ALJ] effectively rejected them."). "[A]n ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it." *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Here, the ALJ did little more than "criticiz[e] [the opinion] with boilerplate language that fails to offer a substantive basis for h[er] conclusion." *Id.*

\ \ \
\ \ \
\ \ \

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated. On remand, the ALJ shall reconsider the opinion and findings submitted by Dr. Cartwright, in light of the context under which these determinations were made, and either credit her opinion or provide specific and

legitimate reasons supported by substantial evidence for rejecting it.  The ALJ shall then re-assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 21, 2015

SHERI PYM
United States Magistrate Judge